UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

TAMMY A. WATKINS,

        Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

Case No. 3:15-cv-00831-AA
OPINION AND ORDER

---

Karen Stolzberg
11830 SW Kerr Parkway, #315
Lake Oswego, OR 97035
    Attorney for plaintiff

Billy J. Williams
United States Attorney
Janice E. Hebert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

John C. LaMont
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S/ 221A
Seattle, Washington 98104
    Attorneys for defendant

1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff brings this action pursuant to the Social Security Act (the Act) to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) for the period between August 27, 2008 and July 19, 2010. For the reasons set forth below, the Commissioner's decision is reversed and remanded to award benefits as of August 27, 2008.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI, alleging disability since August 27, 2008. Tr. 21. The applications were denied initially and upon reconsideration. On July 21, 2010, plaintiff and a vocational expert (VE) testified at a hearing before an Administrative Law Judge (ALJ). Tr. 36-67. On August 6, 2010, the ALJ issued a decision finding plaintiff not disabled. Tr. 18-35. The Appeals Council denied plaintiff's request for review, and plaintiff sought judicial review. On August 6, 2012, this Court remanded the case for further administrative proceedings and clarification of certain medical evidence. Tr. 517, 612-18. After further development of the record, the ALJ held another hearing on December 12, 2013. Tr. 549-572. On December 23, 2013, the ALJ issued a decision finding plaintiff disabled under the Act as of July 19, 2010; the ALJ found that plaintiff was not disabled prior to that date. Tr. 513-41. The Appeals Council denied review, and plaintiff again seeks judicial review. Tr. 480-84.

Born in 1976, plaintiff was thirty-two years old as of her alleged onset date. Tr. 28, 151. Plaintiff has a high school education and past relevant work as a bartender, daycare worker, and nursing assistant, sales clerk, and a food server. Tr. 531. Plaintiff alleges disability since August 2008 primarily due to limitations arising from mental health impairments. Tr. 518, 522-23.

2 - OPINION AND ORDER

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## COMMISSIONER'S DECISION

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since the alleged onset of her disability. Tr. 520; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At steps two and three, the ALJ found that plaintiff had a "medically severe impairment or combination of impairments" including major depressive disorder, personality disorder,

3 - OPINION AND ORDER

generalized anxiety disorder, post traumatic stress disorder, trichotillomania, and since July 19, 2010, an undifferentiated somatoform disorder. Tr. 520. The ALJ found that, prior to July 19, 2010, these impairments did not meet or equal a listed impairment. Tr. 521; 20 C.F.R. §§ 404.1520(c),(d), 416.920(c),(d). The ALJ found that after July 19, 2010, the severity of plaintiff's anxiety disorders met Listing 12.06 and rendered her disabled as of that date. Tr. 533-35; *see* 20 C.F.R. pt. 404, subpt. P, Appx. 1.

For the period before July 19, 2010, the ALJ assessed plaintiff's residual functional capacity (RFC) and found that she was able to perform work at all exertional levels but was limited to simple tasks with simple instructions, no interaction with the public, and only occasional interaction with coworkers. Tr. 521. The ALJ further found that plaintiff could not perform her past relevant work. Tr. 531; 20 C.F.R. §§ 404.1520(e),(f), 416.920(e),(f).

For the period prior to July 19, 2010, the ALJ proceeded to step five, where the burden shifts to the Commissioner to show that a claimant is capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). Based on the testimony of a VE, the ALJ found that plaintiff could perform work as a cafeteria attendant and a hotel/motel cleaner. Tr. 532. Accordingly, the ALJ found plaintiff not disabled under the Act prior to July 19, 2010.

## DISCUSSION

Plaintiff contends that the ALJ erred by finding her not disabled between August 27, 2008 and July 19, 2010. Specifically, plaintiff argues that the ALJ erred by: 1) failing to comply with the remand order; 2) failing to give appropriate weight to medical opinions; 3) rejecting a lay witness statement; 4) finding plaintiff's allegations not credible; and 5) providing an inaccurate RFC assessment.

4 - OPINION AND ORDER

I note that the issue in this case is not whether plaintiff is disabled; the issue is when she became disabled under the Act. The ALJ found that plaintiff met Listing 12.06 as of July 19, 2010, and that she was not disabled prior to that date. After careful consideration of the ALJ's opinion and the record, I find that the onset date of July 19, 2010 is not supported by the record and that benefits should be awarded as of August 27, 2008.

I first address plaintiff's argument that the ALJ failed to develop the record as ordered by this Court. In his previous decision, the ALJ gave little weight to the July 19, 2010 opinion of plaintiff's treating physician, Dr. Schlievert, because it conflicted with her treatment notes. Tr. 27. In its opinion and order dated August 12, 2012, this Court recognized that the July 19, 2010 opinion of Dr. Schlievert arguably conflicted with her previous treatment notes and found that "clarification" from Dr. Schlievert was necessary in light of the "confusing medical record." Tr. 618, 620. On remand, the ALJ stated that he complied with the court's order by requesting the services of a psychological expert to review the record and provide testimony. Tr. 529.

Plaintiff argues that the ALJ's efforts to develop the record were inadequate, and that the ALJ did not make sufficient attempts to re-contact Dr. Schlievert for clarification. I agree that the court's order explicitly ordered the Commissioner to seek clarification from Dr. Schlievert. A review of the record as a whole, though helpful, does not explain the perceived inconsistency between Dr. Schlievert's notes and her medical source statement of July 19, 2010. It is unclear whether and to what extent the Commissioner attempted to recontact Dr. Schlievert. Regardless, plaintiff informed the Appeals Council that "Dr. Schlievert no longer practices in Oregon and is unavailable to the claimant." Tr. 493. In light of this unavailability, a consultive examination and the psychological expert review was an appropriate method to develop the record. Tr. 552, 553-

5 - OPINION AND ORDER

64, 696, 774-83, 1050-58. While Dr. Schlievert's unavailability was unfortunate, it does not render the ALJ's actions non-compliant with the court's order.

Plaintiff also argues that the ALJ failed to comply with the court's order to consider the 2008 GAF score given by a mental health nurse practitioner. However, the ALJ considered the GAF score and ultimately rejected it as having little probative value and no "direct correlation to the severity requirements in our mental disorders listings." Tr. 529-30. The court's remand order did not order the ALJ to accept the GAF; it merely ordered the ALJ to consider it. The ALJ did so, and I find no lack of compliance with the court's order of remand.

Although I find that the ALJ complied with the court's order, his determination of plaintiff's onset date is perplexing in light of the record, Dr. Moore's testimony, and the comments made at the administrative hearing. As a result, I cannot find that the onset date of July 19, 2010 is supported by substantial evidence in the record.

At the administrative hearing, Dr. Moore testified that plaintiff's condition continued to deteriorate throughout the record, and that the "turning point" when her condition met the listing occurred sometime between 2010 and 2012. Tr. 559-60. Toward the end of the hearing, the ALJ stated to plaintiff's attorney: "If you have a suggested [onset] date in perhaps late 2009 or early 2010, then I would certainly consider that date because frankly, at the previous hearing I actually thought the claimant was going to get better and she's gotten worse." Tr. 564. After plaintiff testified, her attorney stated "I could recommend that [plaintiff] accept an amended onset date of January 1, 2009, which is consistent with when she had that hospitalization." Tr. 570. In response to a question about a suggested onset date, the ALJ remarked, "Well, I'm interested in some time between April and September is what I'm interested in. But it may be that January is a better date...I need to refresh my memory with respect to that hospitalization." Tr. 571.

6 - OPINION AND ORDER

However, the ALJ did not find an onset date between April and September 2009 or in January 2009. Rather, the ALJ found an onset date of July 19, 2010, the date of Dr. Schlievert's medical source statement indicating marked limitations as of August 27, 2008. Tr. 474-79. At the same time, the ALJ rejected Dr. Schlievert's statement and gave it little weight. Tr. 529. As emphasized by plaintiff, the ALJ cites no medical record or evidence to support a July 19, 2010 onset date; the ALJ simply states that the record before July 19, 2010 does not support disability. Tr. 523, 525. Aside from Dr. Schlievert's statement, nothing in the medical record supports an onset date in July 2010. Therefore, the ALJ's finding of July 19, 2010 must be based on Dr. Schlievert's medical source statement, which explicitly states that plaintiff's limitations have been present since her alleged onset date of August 27, 2008. Tr. 478.

Despite adopting an onset date coinciding with the date of Dr. Schlievert's medical source statement, the ALJ again gave little weight to the statement due to its inconsistency with treatment notes. Tr. 529. The ALJ further found that Dr. Moore gave more credence to Dr. Schlievert treatment notes as opposed to the medical source statement. Tr. 529. While true, Dr. Moore also testified that plaintiff's personality disorder, her "primary issue," was reflected most clearly in Exhibit 19-F, an exhibit which includes Dr. Schlievert's treatment notes. Tr. 555.

In fact, Dr. Moore testified that the record clearly demonstrated the existence of plaintiff's personality disorder in 2008 and 2009. For example, Dr. Moore testified, "I think the record is clear that anxiety and its manifestations are present at least off and on throughout the record. I think probably far more important or even as a part of the whole anxiety cluster is personality disorder…I think the most telling reflection of this and the most accurate kind of sense one would get about his lady's social functioning is [exhibit] 19-F." Tr. 555. Dr. Moore then referenced treatment notes of April 2009 included in Exhibit 19-F as evidence of plaintiff's

7 - OPINION AND ORDER

"very, very difficult kind of style of social functioning," and "where her primary issues lie." Tr. 556. The ALJ remarked that at the first hearing, he "had the feeling that he claimant would do and could do better," but that her condition had instead worsened. Tr. 557. Dr. Moore agreed and stated "early on there was some potential… and some hope that she might be able to engage…But you're right, absolutely, I think she's worse, not better." Tr. 557.

Further, while Dr. Moore noted that plaintiff's activities of daily living were not a "big problem" and that "she's able to as she needs to," Dr. Moore testified that plaintiff's social functioning was "clearly markedly impaired" as evidenced by Exhibit 19-F, which includes Dr. Schlievert's treatment notes. Tr. 558. Dr. Moore noted that during plaintiff's January 2009 hospitalization, hospital personnel "identified the personality disorder and you could just see it in the kinds of comments they made about reporting her personality issues by and large." Tr. 558-59. Dr. Moore also testified that plaintiff's concentration, persistence, and pace was not "quite consistently" markedly impairment "all across the time frame…but it's getting worse." Tr. 558. Finally, Dr. Moore stated that in "'08-'09, we start to see what the issue are," though she believed that plaintiff's condition had not "turned the corner" to meet the listing until sometime in 2010 to 2012. Tr. 559-60.

While Dr. Moore testified that plaintiff's impairments did not reach a "turning point" and equal a listing until sometime after 2010, disability is not determined solely on the listings; otherwise, there would be no need for steps four and five of the evaluation process. Even if plaintiff's condition did not equal a listing prior to 2010, the record and Dr. Moore's testimony support Dr. Schlievert's opinion that plaintiff suffered marked impairments before July 19, 2010.

I recognize the difficulty faced by the ALJ in determining an onset date, given the medical evidence of record and the nature of plaintiff's impairments. However, I cannot find that

8 - OPINION AND ORDER

the stated onset date of July 29, 2010 is supported by substantial evidence in the record, particularly when the only connection to disability on that date is the medical source statement of Dr. Schlievert indicating marked impairment as of August 27, 2008.

Moreover, I do not find that remand for further clarification of the onset date is warranted. The record includes a medical source statement from a treating physician who opined that plaintiff's disability existed as of August 27, 2008, and the testimony of a psychological expert who stated that treatment records reflect plaintiff's personality disorder in 2008 and 2008 and marked impairments in 2009. Tr. 474-78, 555-59; *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (treating physician's opinion is entitled to great weight if uncontradicted). As noted by the previous decision of this Court, "the medical record clearly establishes Plaintiff suffers from severe mental impairments." Tr. 614. Given the medical evidence and testimony of record, I find that further administrative proceedings "would serve no useful purpose." *Benecke v. Barnhart*, 379 f.3d 587, 594 (9th Cir. 2004).

## CONCLUSION

The ALJ's decision that plaintiff did not establish disability under the Act between August 27, 2008 and July 19, 2010 is not supported by substantial evidence in the record. Accordingly, the Commissioner's decision is reversed and remanded for an award of benefits as of August 27, 2008.

IT IS SO ORDERED.

Dated this 20th day of July, 2016.

Ann Aiken
United States District Judge

9 - OPINION AND ORDER